IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DUNN & FENLEY, LLC, doing business as K DUNN & ASSOCIATES,<br><br>    Plaintiff,<br><br>  v.<br><br>RONALD L. ALLEN, an individual, and ALLEN EYE CARE ASSOCIATES, S.C., a Wisconsin service corporation,<br><br>    Defendants. | Civil No. 02-1750-JE<br><br>OPINION AND ORDER |

  Kenneth R. Davis II
  Lane Powell Spears Lubersky LLP
  601 S.W. Second Avenue, Suite 2100
  Portland, OR 97204-3158
    Attorney for Plaintiff

  David S. Aman
  Caroline Harris Crowne
  Tonkon Torp LLP
  1600 Pioneer Tower
  888 S.W. Fifth Avenue
  Portland, OR 97204-2099
    Attorneys for Defendant

JELDERKS, Magistrate Judge:

1 - OPINION AND ORDER

Plaintiff Dunn & Fenley, LLC (Dunn) prevailed in a jury trial of this breach of contract and copyright infringement action against defendants Ronald Allen and Allen Eye Care Associates, S.C. Following entry of judgment in its favor, plaintiff moves for an award of attorney fees and submits a bill of costs. Defendants move for a new trial or, in the alternative, for an order altering or amending the judgment. Defendants' motion is denied, and plaintiff is awarded attorney fees and costs as set out below.

## BACKGROUND

Plaintiff Dunn provides marketing and consulting services to ophthalmologists who provide laser surgery services. Defendants are Ronald Allen, an ophthalmologist whose services include laser surgery, and Allen Eye Care Associates.

During the times relevant to this action, defendants promoted "lasik" eye surgery through free seminars which were advertised in Racine and Kenosha, Wisconsin. In August, 2001, the parties concluded a contract under which Dunn provided marketing services to defendants. The monthly membership and licensing fee for the services was $1,595. The material Dunn provided included ad copy used to advertise lasik eye surgery seminars. The ad copy included a copyrighted illustration showing a pair of eyes and accompanying text describing the seminars. In their agreement to purchase Dunn's services, defendants agreed that it would not use Dunn's advertising materials after the parties' contract was terminated.

In January, 2002, some four months after entering into the agreement, defendants terminated the agreement and stopped paying Dunn monthly membership and licensing fees.

In November, 2002, Dunn discovered that, after defendants had terminated the parties' agreement, they continued to use material that this court later found clearly infringed plaintiff's copyright. On November 21, 2002, plaintiff sent defendants a letter asserting that defendants had been infringing plaintiff's copyrighted material and breaching the parties' agreement. In that letter, plaintiff Dunn offered to resolve the matter for a payment of $15,950, based upon a rate of $1,595 for each of the 10 months that it asserted defendants had used infringing materials after they stopped paying for plaintiff's services. Plaintiff briefly summarized the types of damages available in infringement actions, asserted that the amount demanded was "nominal compared to what damages could be if this matter needs to be taken further," and stated that the matter would be turned over "to our legal counsel for further action" if defendants did not pay.

In response, defendant Ronald Allen stated that there were "no circumstances" under which he would make any payment to plaintiff to avoid litigation. Allen asserted that defendants had not infringed plaintiff's copyrighted material, and stated that there were "significant differences" between the "text, photos and content" of plaintiff's and defendants' materials.

3 - OPINION AND ORDER

Plaintiff subsequently brought this action alleging copyright infringement and breach of contract, and made additional offers to resolve the dispute upon defendants' payment of the amount it asserted was owing on the contract. Plaintiff also asserted that it expected to recover attorney fees if the matter had to be litigated, and opined that those fees would quickly exceed the approximately $16,000 it demanded to resolve the dispute.  In a letter dated July 14, 2004, plaintiff's attorney asserted that defendants had no viable defense to liability, and encouraged defendants to consider resolving the action to avoid further litigation expenses.

In an Opinion and Order filed on November 16, 2004, I granted plaintiff's motion for summary judgment on its infringement and breach of contract claims.  In the Opinion, I noted that the plaintiff's copyrighted material and the allegedly infringing material were "very similar," and observed that a trier of fact could only conclude that the relevant tests for establishing copyright infringement were satisfied.

After liability was established in the court's Opinion and Order, defendants offered to pay twelve times the monthly contract price of $1,595 in exchange for plaintiff's dismissal of all claims, including any claim for attorney fees. Plaintiff rejected this offer as not "in the ballpark" in light of significant attorney fees it had incurred.

In a letter dated January 23, 2006, plaintiff told defendants that it would resolve the dispute for payment of the contract fees during the months of breach and infringement, plus its attorney fees. The offer was not accepted.

On May 18, 2006, defendants made an offer of judgment in the amount of $75,000 to resolve plaintiff's claims, including the claim for attorney fees. Plaintiff had incurred more than $75,000 in attorney fees by that time. In its response, plaintiff stated that its damages were in the "six figure" range, and noted that it had a strong basis for an award of attorney fees under statute.

Defendants then offered plaintiff $20,000 to resolve the dispute, with a stipulation that the issue of attorney fees be submitted to the court for resolution.

Plaintiff responded with a demand that defendants pay $125,000, with the attorney fee issue reserved for the court. After the first day of trial, plaintiff offered to resolve the dispute by defendants' payment of plaintiff's attorney fees, which were approximately $200,000 at that time. Defendants did not accept the offer, and made no counter offer.

At the conclusion of the trial in April, 2007, the jury found that defendants' copyright infringement caused plaintiff $15,950 in actual damages, and that defendants had realized net profits in the amount of $73,260 as a result of the infringement. The jury further found that defendants' infringement of plaintiff's copyrighted material was willful,

and awarded statutory damages in the amount of $118,000 based upon willful infringement. Following a hearing concerning post-trial motions, I subsequently entered judgment in plaintiff's favor in the amount of $118,000.

**PENDING MOTIONS**

1. <u>Motion for New Trial and Alternative Motion to Alter or Amend the Judgment</u>

Defendants move for a new trial pursuant to Fed. R. Civ. P. 59(a). In the alternative, they move for an order pursuant to Fed. R. Civ. P. 59(e) altering or amending the judgment to remove Dr. Ronald Allen as a judgment debtor. These motions are based upon defendants' contentions that the court erred in failing to require the jury to make separate findings of willful copyright infringement as to the two defendants, and in deciding as a matter of law that defendant Allen Eye Care's "post-contract advertisements were substantially similar to Plaintiff's copyrighted advertisement."

I disagree with defendants' assertion that the jury was not required to make a finding that Dr. Ronald Allen had willfully infringed plaintiff's copyrighted material in order to award statutory damages against both defendants. The jury was explicitly instructed that it should award between $750 and $150,000 in statutory damages if the jurors found "that defendants Ronald Allen <u>and</u> Allen Eye Care Associates willfully infringed plaintiff Dunn & Fenley's copyright . . . ." [Emphasis added.] Accordingly, the jury

could not have awarded statutory damages without finding that both defendants willfully infringed plaintiff's copyrighted material, and entry of judgment against Dr. Ronald Allen for the amount of the statutory damages was appropriate.

I also disagree with defendants' assertion that the court erred in granting plaintiff's motion for summary judgment on the copyright infringement claim. Given the striking similarity between the works in question, and defendants' unquestionable access to plaintiff's material, a reasonable trier of fact could only find that defendants infringed plaintiff's copyrighted material. Plaintiff was entitled to summary judgment.

2. Plaintiff's Motion for an Award of Attorney Fees

a. Award of Fees is Appropriate

Plaintiff seeks an award of attorney fees in the amount of $218,475.

Defendants assert that plaintiff's motion for an award of attorney fees should be denied in its entirety. In the alternative, in the event that the court decides that an award of attorney fees is appropriate, defendants assert that the amount of fees awarded should not exceed $100,000.

Under the Copyright Act, the court has discretion to award "reasonable attorney's fees" as part of the costs awarded to a prevailing party in an infringement action. 17 U.S.C. § 505. In exercising that discretion, the court may consider, but is not limited to, five factors. Smith v.

Jackson, 84 F.3d 1213, 1221 (9th Cir. 1996). These factors include: (1) the degree of success the party obtained; (2) frivolousness; (3) motivation; (4) the legal and factual objective reasonableness of the party that did not prevail; and (5) the need to further "considerations of compensation and deterrence." Id. (citations omitted). The Supreme Court has concluded that these factors "may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." Goferty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19 (1994). Though a finding that infringement was willful does not "in itself, compel" an award of attorney fees, it is an "important factor favoring" an award of those fees.[1] Historical Research v. Cabral, 80 F.3d 377, 379 (9th Cir. 1996) (per curiam).

Applying the above factors in the present action, I conclude that plaintiff is entitled to an award of attorney fees as the prevailing party. Plaintiff was very successful in this litigation. Through summary judgment proceedings, plaintiff established that defendants had infringed its copyrighted material. At trial, it further established that the infringement was willful. The jury returned a verdict awarding plaintiff all of the actual copyright damages it sought, awarding plaintiff $73,260 in profits that it found defendants had realized as a result of the infringement, and

---

[1] The parties have cited, and I have found, no reported decisions in which a plaintiff that established willful infringement was not awarded attorney fees.

awarding $118,000 in statutory damages, based upon a finding of willful infringement.  The verdict far exceeded any amount that defendants ever offered to resolve the dispute.

Though I do not characterize defendants' defense to the infringement claim as "frivolous," I conclude that the defense to liability was unsustainable, given the overwhelming similarity in the works in question.  I remain satisfied that any reasonable trier of fact would find the similarities in the works striking both upon a casual comparison and upon closer examination, and would conclude that defendants' work infringed plaintiff's copyrighted material.  Given the clear similarity of the works, defendants' persistence in arguing that its material did not infringe plaintiff's copyright, and defendants' refusal to resolve the matter for the modest sums that plaintiff initially demanded, were not reasonable.  Defendants continued to reject reasonable offers of settlement after the court granted plaintiff's motion for summary judgment on the issue of liability, causing all parties to incur the significant legal fees required by a full trial.

Turning to the next factor, defendants' motivation, I note that the jury found that defendants willfully infringed plaintiff's copyrighted material.  Given that the jury was instructed that infringement is willful "if the infringer knows that its conduct infringes a copyright," the jury found that defendants knowingly infringed plaintiff's copyrighted material when they used infringing advertising material after they stopped paying plaintiff the monthly fees required under

the parties' agreement.  This finding of willfulness, and the continued escalation of attorney fees required by defendants' refusal to resolve an action in which liability was readily apparent for the modest amounts plaintiff demanded in the early phases of this litigation, favor an award of attorney fees here.

The last of the factors cited above, "considerations of compensation and deterrence," also favors awarding plaintiff attorney fees.  Here, the court found the defendants' infringement was so clear that summary judgment was appropriate, and the jury found that defendants knowingly infringed plaintiff's copyrighted material.  In addition, defendants refused to resolve the dispute for a relatively modest amount, even after liability was established, requiring plaintiff to continue to incur substantial attorneys fees.  If plaintiff were not compensated for its attorney fees, it would expend more protecting its copyright from an obvious and willful infringement than it would recover in damages.
As noted above, a finding that infringement is willful is an important factor favoring an award of fees.  <u>Cabral</u>, 80 F.3d at 379.  An award of attorney fees under the circumstances of the present action is also an important deterrence to further infringements.  Without recovery of attorney fees, copyright holders like plaintiff could ill afford to protect their rights in the face of obvious and willful infringement.

b. <u>Amount of Fees Plaintiff Should Recover</u>

In the absence of any reported decisions from the Ninth Circuit Court of Appeals specifically setting out the standards for determining the amount of attorney fees a prevailing party should recover in a copyright infringement action, I agree with plaintiff's assertion that the "lodestar" approach used in trademark actions is appropriate. <u>See</u> <u>Intel Corp. v. Terabyte Int'l, Inc.</u>, 6 F.3d 614, 622 (9th Cir. 1993). Under the "lodestar" approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate to determine the "presumptively reasonable" amount. <u>Id.</u> The "lodestar" amount may then be adjusted by the "Kerr factors" that have not been subsumed in the lodestar calculation. <u>Id.</u>; <u>see</u> <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69-70 (9th Cir. 1975). These factors include: the time and labor required; the skill required to provide the legal services; the preclusion of other employment caused by acceptance of the case; the customary fee; the limitations imposed by the client or the case; the amount in controversy and the results obtained; the experience, reputation, and ability of counsel; the undesirability of the case; the nature of the professional relationship with the client; and awards in similar actions.[2]

---

[2] Though courts formerly considered whether the fees were contingent or fixed as one of these factors, this is no longer a consideration. <u>See</u>, <u>e.g.</u>, <u>City of Burlington v. Dague</u>, 505 U.S. 557, 564 (1992); <u>Davis v. City and County of San Francisco</u>, 976 F.2d 1536, 1549 (9th Cir. 1992), <u>vacated in part on other grounds</u>, 984 F.2d 345 (9th Cir. 1993).

11 - OPINION AND ORDER

In determining whether a fee is reasonable, courts consider the prevailing rates in the community for similar services. Intel, 6 F.3d at 622. In this District, courts consider the Oregon State Bar Economic Survey as the initial benchmark in determining whether a requested hourly rate is reasonable. Roberts v. Interstate Distributor Co., 242 F. Supp. 2d 850, 857 (D. Or. 2002).

Applying the relevant factors, and based upon a review of the records submitted and a familiarity with this action developed during the nearly five years it has been pending, I conclude that the time plaintiff's counsel devoted to this action was reasonable. I also conclude that the hourly rates for the first law firm that represented plaintiff were reasonable and appropriate.[3] Though the issue of liability was straightforward, discovery related to the issue of damages, and trial of that issue, were complex. Plaintiff's counsel reasonably concluded that it was necessary to take a number of depositions, and was required to devote substantial time to locating and analyzing documents related to the damages issue.

Plaintiff seeks compensation for the services of Kenneth Davis II, the attorney who did most of the work for plaintiff in this matter, at hourly rates varying between $280 and $360 per hour. Davis represented plaintiff ably in this matter. However, based upon my review of the 2002 Oregon State Bar

---

[3]These rates include compensation of Peter Heuser at the rate of $340.00 per hour. I conclude that compensating at this rate, while compensating Davis at the rate of $300.00 per hour is appropriate, because Heuser has substantially more legal experience than has Davis.

Economic Survey and my understanding of prevailing rates for attorneys of Davis' experience performing the kind of legal work required in this action, I conclude that the appropriate hourly rate for Davis' work is $300 per hour.[4] Applying this rate to the 415 hours that Davis devoted to this action, plaintiff shall recover $124,500 for Davis' services.

Plaintiff's counsel notes that paralegals were used heavily, and correctly notes that using paralegals rather than attorneys where possible reduced plaintiff's attorneys fees. While I commend plaintiff's counsel on the decision to hold down legal fees through the extensive use of paralegals, I conclude that the hourly rates at which the paralegals' services were billed exceeds the rate which defendants reasonably can be required to pay. According to the records before the court, plaintiff's counsel billed for paralegal services at rates varying between $155 and $170 per hour. I conclude that these rates are excessive, and have calculated the reasonable rate for these services as $85 per hour in calculating the award of attorney fees. This adjustment, combined with the adjustment of Davis' hourly rate, reduces the amount of attorneys fees to which plaintiff is entitled from the $218,475 plaintiff has requested to $177,681.

---

[4]Though this determination has the effect of actually paying for Davis' services at a rate higher than that at which he billed during the early phase of this litigation, it reduces the total amount of the compensation for his work by $16,746.50. I am satisfied that the resulting total of $124,500 for Davis' service is a fair and appropriate amount.

3. Bill of Costs

Plaintiff seeks recovery of $9,041.76 in costs as a prevailing party pursuant to 28 U.S.C. § 1920 and § 1923(a). It seeks an additional $10,774.71 for legal expenses pursuant to 17 U.S.C. § 505.

For the reasons briefly set out below, plaintiff's request to recover costs is granted to the extent that plaintiff shall recover $6,796.50 pursuant to 28 U.S.C. § 1920 and § 1923(a). Plaintiff's request to recover costs pursuant to 17 U.S.C. § 505 is denied.

a. Recovery of Costs Pursuant to 28 U.S.C. §§ 1920, 1923(a)

Plaintiff seeks recovery of the costs of taking certain depositions, trial transcripts, clerk fees, witness fees, and the cost of photocopying and reproducing certain exhibits. Plaintiff also seeks recovery of $250 in "prevailing party fees" pursuant to 28 U.S.C. § 1923(a).

Defendants object to plaintiff's recovery of the $547.50 sought for the taking of the depositions of Fred Ricker and Michelle Laycock, and the $4,321.10 sought for the taking of the depositions of defendant Ronald Allen and Jody LaPorte. Defendants contend that plaintiff should not recover any cost of taking the depositions of Ricker and Laycock because their depositions were not submitted into evidence during the trial or submitted to the court. They contend that plaintiff should not recover the costs of taking the depositions of Allen and

LaPorte because their depositions were taken by videotape, which increased the costs.

I disagree, and will allow plaintiff to recover these costs. Ricker and Laycock were employed by newspapers that published advertisements which infringed plaintiff's copyrighted material. Though the depositions of these individuals were not entered into evidence at trial, I conclude that the taking of their depositions would have appeared reasonably necessary to plaintiff's counsel. I will allow the expenses of the taking of the depositions of Allen and LaPorte because taking videotape depositions by telephone cost less than traveling to Wisconsin to take the depositions in person.

Though defendants have not objected to plaintiff's recovery of the $2,245.26 that plaintiff paid for transcripts of portions of the trial proceedings, I will not allow recovery of these costs. Though the trial transcript may have been of some use to counsel, it was not necessary within the meaning of § 1920, and this court does not routinely allow for the recovery of the costs of such transcripts.

Deducting the cost of the trial transcript, plaintiff is entitled to recover costs in the amount of $6,796.50.

b. Recovery of Costs Pursuant to 17 U.S.C. § 505

Section 505 of Title 17 U.S.C. provides that, in an action such as this, the court has the discretion to "allow the recovery of full costs by or against any party . . . ."

The $10,774.71 in expenses that plaintiff seeks to recover pursuant to this statute include: $309.16 for long distance telephone charges; $12.90 for facsimile charges; $4,524.62 for photocopy charges; $62.40 for "records recovery"; $23.34 for postage charges; $388.36 for shipping charges; $3,639.84 for computerized legal research; $64.09 for "docket research"; and $1,750.00 for expert witness fees.

Defendants note that, in Hearst Corp. v. Oregon Worsted Co., 2001 WL 668040, *9 (D. Or. April 18, 2001), the Honorable Anna Brown denied a request for recovery of these kinds of costs under 17 U.S.C. § 505 on the grounds that such expenses "constitute normal office overhead that typically is not shifted to the losing party in fee-bearing litigation."

Plaintiff correctly observes that Judge Brown issued this decision before the Ninth Circuit Court of Appeals addressed the question of what costs are recoverable under § 505 in 20th Century Fox Film v. Enter Distributing, 429 F.3d 869, 884-85 (9th Cir. 2005). There, the court held that "district courts may award otherwise non-taxable costs, including those that lie outside the scope of § 1920, under § 505." Id. at 885.

The Ninth Circuit's decision in 20th Century Fox clearly allows district courts to award costs to a prevailing party under § 505 that are not otherwise ordinarily recoverable under 28 U.S.C. § 1920. Nevertheless, I deny plaintiff's request to recover those expenses here, because I am satisfied that the attorney fees awarded plaintiff should include most of the costs that plaintiff seeks to recover under § 505. The

16 - OPINION AND ORDER

hourly rates billed by plaintiff's counsel are ample, and are sufficient to include the kinds of ordinary office expenses such as telephone, photocopy, and postage charges that plaintiff seeks to recover under § 505. The $1,750 in expert witness fees that plaintiff seeks to recover will not be awarded because I did not allow the witness in question to testify at trial. To the extent that the other expenses that plaintiff seeks to recover here may not be ordinarily included in counsel's hourly rate, I exercise my discretion under § 505 to deny the recovery of these costs because I am satisfied that the award of attorney fees adequately compensates plaintiff for the costs of this litigation.

## CONCLUSION

Defendants' motion for a new trial or for an order altering or amending the judgment (# 129) is DENIED. Plaintiff's motion for an award of attorney fees (# 125) is GRANTED, to the extent that plaintiff shall recover attorney fees in the amount of $177,681.00.[5] Plaintiff's motion for recovery of costs (# 132) is GRANTED IN PART and DENIED IN PART. Plaintiff's request to recover costs pursuant to 28 U.S.C. § 1920 is GRANTED to the extent that plaintiff shall

---

[5]This total is comprised of Davis' fees, $124,500; Barhoum's fees, $3,327; Mehrbani's fees, $7,241; paralegal fees/Lane Powell, $26,129; and fees for the Kolish Hartwell firm, $16,484.

recover costs in the amount of $6,796.50, and is otherwise DENIED.  Plaintiff's request to recover costs pursuant to 17 U.S.C. § 505 is DENIED.

DATED this 9th day of October, 2007.

/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge